UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| **NUVASIVE, INC.,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Case No. 3:24cv00010 |
| | ) |
| **CLAIRE KETTERING** | ) |
| | ) |
| Defendant. | ) |
| | ) |

## COMPLAINT

Through its attorneys, and for its Complaint against Defendant Claire Kettering, Plaintiff NuVasive, Inc. alleges that:

### NATURE OF ACTION

1. NuVasive files this action because Kettering – a former sales representative affiliated with one of NuVasive's exclusive distributors – Arrow MedTech, LLC – is violating contractual obligations she owes to NuVasive and Arrow MedTech. Shortly after Kettering resigned from Arrow MedTech, a dispute arose as to the terms of her restricted covenants and whether she violated/was violating them. After weeks of negotiations, the parties entered into the Confidential Settlement Agreement (the "Settlement Agreement", attached as **Exhibit 1**) that, without limitation, contains the restrictions with which Kettering agreed to comply.

2. Kettering began violating the Settlement Agreement's restrictions on her ability to compete against NuVasive shorty after she agreed to its terms.

3. As a result of Kettering's violations of the Settlement Agreement, NuVasive asks this Court to find that she violated certain obligations contained in that document and award damages.

## THE PARTIES

4. NuVasive is a citizen of Delaware and California. It is incorporated under the laws of Delaware, and maintains its principal place of business in San Diego, California.

5. Kettering is a citizen of Virginia. She resides at 205 6th Street NW, Charlottesville, Virginia 22903-4512.

## JURISDICTION AND VENUE

6. This Court has original jurisdiction of this case under 28 U.S.C. § 1332 because this is a civil action between citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

7. Venue is proper in the Western District of Virginia, Charlottesville Division pursuant to 28 U.S.C. § 1391 and Local Rule of Court 2(b). Defendant resides in this judicial district and a substantial part of the events or omissions giving rise to the claims occurred in this district.

## ALLEGATIONS RELATING TO ALL COUNTS

8. NuVasive is an innovative, market-leading medical device company focused on the design, development, and marketing of products for the surgical treatment of diseases of the spine.

9. The spinal implant industry is highly competitive. Industry participants typically make their sales representatives privy to their most confidential trade secrets, including, without limitation, pipeline products and sales strategies. Accordingly, industry participants typically require their sales personnel – be they employees or independent contractors – to agree to restrictive covenants (including, without limitation, confidentiality, non-compete, and non-solicitation provisions) which restrict their ability to compete with their employers during their employment and for a reasonable amount of time after their employment terminates.

10.     NuVasive markets its surgical products through its exclusive sales force, which consists of directly employed personnel and exclusive sales agents.  NuVasive invests substantial funds into providing this sales force with extraordinary, specialized, comprehensive, and industry-leading training. This training equips NuVasive's sales force with a deep understanding of NuVasive's products, methodology, trade secrets, and other valuable, confidential, or proprietary information that, without limitation prepares them to support surgeons who utilize NuVasive's products in the operating room.

11.     NuVasive invests significant time, money, and resources into its sales force so that they can favorably represent the company inside and outside of the operating room and create goodwill with potential and existing NuVasive customers.  This goodwill, arising from the substantial customer relationships developed between NuVasive's sales personnel and its customers, belongs to NuVasive, as it is the product of NuVasive's significant investment.

**Kettering's contractual obligations**

12.     Kettering's career with NuVasive began in 2008 when it hired her as a Spine Specialist (i.e., a sales representative).  As a condition of Kettering's engagement by NuVasive, she agreed to and executed a Proprietary Information, Inventions Assignment and Non-Competition Agreement, which contained confidentiality, non-compete, and non-solicitation provisions on March 7, 2008.

13.     Kettering remained directly employed by NuVasive until February 1, 2020, when Arrow MedTech became NuVasive's exclusive distributor in a region that included her NuVasive sales territory.  At this time, Kettering continued to be subjected to reasonable confidentiality, non-solicitation, and non-competition obligations to NuVasive (and Arrow MedTech).

14.     On February 9, 2023, NuVasive announced that it entered into an agreement to merge with Globus Medical, Inc. ("Globus").  Approximately two weeks after this announcement,

Kettering met with Arrow MedTech's distributor principal, Doug Karczewski. During this meeting, Kettering stated that she "received many calls from almost every company" following the merger announcement and that she was "very in-demand." She then acknowledged having conversations with certain competitive companies and voiced her intent to meet others.

15. Karczewski encouraged Kettering to engage in such conversations and explore those opportunities. He even offered to help her evaluate opportunities presented to her.

16. Though Karczewski encouraged Kettering to seek out and evaluate opportunities, he also reminded her that NuVasive would strictly enforce Kettering's post-engagement restrictive covenants—including, without limitation, the Compliance Agreement's non-competition and non-solicitation obligations—and that Kettering could not solicit or accept business from any NuVasive customers (including facilities and/or surgeon-customers) during the restricted period.

17. On June 16, 2023, Kettering verbally resigned from her independent contractor relationship with Arrow MedTech and joined Align Medical, a distributor of various products used in spine and orthopedic surgery owned by Justin Holland. On information and belief, Align Medical had no sales representatives who were permitted to work within UVA Health University Hospital in Charlottesville, Virginia ("UVA"), at the time Kettering joined it.

18. After she resigned, disputes arose about the extent of Kettering's restrictive covenants and whether she was complying with them.

19. After NuVasive and Kettering retained legal counsel, they commenced negotiations that ended with them entering into the Settlement Agreement.

**The Settlement Agreement's terms and conditions**

20. Without limitation, the Settlement Agreement contains bargained-for restrictive covenants that are governed by Virginia law. One such covenant is Kettering's and NuVasive's

4

agreement that, until September 15, 2024, Kettering will not sell any product that competes with NuVasive's product offerings (other than certain carve-out products) within her restricted territory, which includes, without limitation, the UVA Medical Center in Charlottesville, Virginia.

21.     Paragraph 1 of the Settlement Agreement requires Kettering to pay NuVasive $90,000.00 in fourteen equal, monthly payments, beginning on January 1, 2024.

22.     Paragraph 13 of the Settlement Agreement provides that the prevailing party in litigation to enforce the Settlement Agreement's terms and conditions is entitled to seek recovery of the costs and attorneys' fees that party incurred in enforcing the Settlement Agreement's Terms and Conditions.

**Kettering continues unlawfully competing with NuVasive after entering into the Settlement Agreement.**

23.     After entering into the Settlement Agreement, Kettering remained in near constant contact with many of her NuVasive customers, soliciting them to utilize products distributed by Align Medical, such as, without limitation, those designed and manufactured by Medtronic, LifeSpine, Cerapedics, and Carlsmed. Upon information and belief, she often used the messaging application Signal for these surreptitious conversations.

24.     By way of example, and without limitation, the UVA falls squarely within Kettering's restricted territory. Nevertheless, Kettering supported at least two spine surgeries performed at this facility by the same neurosurgeon on January 29, 2024, and February 14, 2024. The neurosurgeon utilized LifeSpine's products in the first surgery and Medtronic's in the second. Both companies are NuVasive's competitors in the spine industry, Kettering currently distributes both companies' products, and, upon information and belief, the neurosurgeon did not utilize these companies' products prior to Kettering parting ways with NuVasive.

4881-5443-2162, v. 3

25. In addition to personally supporting surgeries at UVA where surgeons utilize competitive equipment and implants, Kettering is, upon information and belief, directing the activities of other Align Medical and Medtronic sales representatives who work within her restricted territory (doing indirectly what she is contractually prohibited from doing directly). Upon information and belief, Kettering utilizes the Signal text messaging application (or some similar application) that allows her to send and receive encrypted messages.

26. An example of Kettering directing the actions of others associated with Align Medical is her, upon information and belief, directing Taylor Burton, a former NuVavise/Arrow Med Tech sales representative who is also contractually restricted from supporting certain surgeries at UVA, to support a surgeon's use of Carlsmed's competitive products on February 19, 2024.

## BREACH OF CONTRACT

27. The Settlement Agreement contains legally enforceable obligations that Kettering owes to NuVasive.

28. Kettering breached – and continues to breach – the Settlement Agreement's terms and conditions. For example, and without limitation, she breached (and continues to breach) paragraph 2(b) by, directly and indirectly, representing competitive products within her restricted sales territory. Examples of her doing so include, without limitation:

- soliciting business from surgeons and medical facilities within her restricted territory;
- supporting surgeries at UVA (and possibly other facilities within her restricted territory); and
- directing other sales representatives' actions within her restricted territory to achieve indirectly what she cannot achieve directly.

29. Kettering's violations of the contractual obligations imposed on her by the Settlement Agreement caused NuVasive to incur monetary damages in the form of lost revenue and profits, and other monetary damages, such as the attorneys' fees it incurred to enforce its rights.

### PRAYER FOR RELIEF

WHEREFORE, NuVasive respectfully requests that this Court:

A. find that Kettering breached the Settlement Agreement;

B. enter judgment in favor of NuVasive and against Kettering for her breaches of the Settlement Agreement in the amount of at least $250,000.00, plus pre and post judgment interest, attorneys' fees, and the costs it incurred in prosecuting this action; and

C. grant any other further and general relief it deems just and proper

NUVASIVE, INC.

By: /s/ Michael L. Donner, Sr.

Michael L. Donner, Sr., Esq. (VSB No. 40958)
Setliff Law, P.C.
4940 Dominion Boulevard
Glen Allen, Virginia 23060
(804) 377-1267 (voice)
(804) 377-1287 (facsimile)
mdonner@setlifflaw.com
Counsel for the Plaintiff

Christopher W. Cardwell (*pro hac vice* forthcoming)
Mary Taylor Gallagher (*pro hac vice* forthcoming)
M. Thomas McFarland (*pro hac vice* forthcoming)
GULLETT SANFORD ROBINSON & MARTIN PLLC
150 Third Avenue South, Suite 1700
Nashville, TN 37201
(615) 244-4994 (Telephone)
(615) 256-6339 (Facsimile)
ccardwell@gsrm.com
mtgallagher@gsrm.com
tmcfarland@gsrm.com
gragsdale@gsrm.com

*Attorneys for Plaintiff, NuVasive, Inc.*

4881-5443-2162, v. 3